***********
Plaintiff's motion to dismiss defendants' appeal must be, and hereby is DENIED. Defendants' related motion, made at oral argument before the Commission pursuant to North Carolina Rule of Civil Procedure 62(b) (1) is GRANTED.
 ***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Stanback along with the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms, with some modification, the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff's alleged date of injury is February 3, 1997.
4. On the date of the injury giving rise to this claim, an employment relationship existed between plaintiff and defendant-employer.
5. On the date of the injury giving rise to this claim, Wausau Insurance Company was the workers' compensation carrier on the risk.
6. Judicial notice may be taken of Industrial Commission Forms 18, 33, and 33R.
7. On the date of the injury giving rise to this claim, plaintiff had an average weekly wage of $303.15.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Plaintiff's average weekly wage of $303.15 yields a compensation rate of $202.11.
2. On the date of the hearing before the Deputy Commissioner in this matter, plaintiff was 37 years old. Plaintiff completed the ninth grade of school, and she has no special skills or licenses beyond that level.
3. Prior to her employment with the defendant-employer, plaintiff had no significant history of respiratory problems or chemical exposure. She also had been regularly employed throughout her life.
4. In August 1994, plaintiff began employment with defendant-employer, Ahoskie Animal Hospital. Plaintiff's job duties included substantial work with chemicals, including x-ray fixer and developer, cage cleaning agents, flea dips, antibacterial cleaners, pesticides, bleaches, and numerous other chemicals. The application of many of these chemicals, including flea dip and other insecticides, was performed in a poorly ventilated room. Plaintiff often was exposed to direct skin contact with chemicals. Plaintiff also inhaled vapors from such chemicals on a regular basis.
5. Defendant-employer had no special equipment for ventilation of vapors. Defendant-employer did not supply or require the use of protective respirators, aprons, gloves, eye shields, or other protective devices. Plaintiff received no special training from defendant-employer regarding any hazards associated with chemicals present in her workplace.
6. Over a period of time, plaintiff began to develop a number of physical symptoms, including headaches, burning eyes, fatigue, nosebleeds, nausea, sores on the inside of her nose, tightness in her chest, and difficulty breathing. Plaintiff never suffered from such symptoms before her employment with the defendant-employer. Plaintiff's symptoms improved somewhat when she was away from work, but the symptoms resumed when she returned to work.
7. Plaintiff was treated by Dr. Jane McCaleb beginning in August of 1996. Dr. McCaleb made objective findings on examination, including swollen lymph nodes, inflamed throat, runny nose, and respiratory symptoms. After extensive testing to rule out other causes for plaintiff's symptoms, Dr. McCaleb reached the conclusion that plaintiff's symptoms were a result of exposure to chemicals in her work. Dr. McCaleb removed plaintiff from her employment as a result.
8. Dr. McCaleb testified that the plaintiff's symptoms were due to causes and conditions characteristic of, and peculiar to, her employment with Ahoskie Animal Hospital. She further stated that plaintiff's symptoms were not an ordinary disease of life to which the general public is equally exposed. Dr. Caleb additionally expressed the opinion that plaintiff's employment with the defendant-employer was a significant contributing factor in the development of her symptoms, indicating that plaintiff suffered the consequences of that exposure. Finally, Dr. McCaleb opined that, but for the exposure to chemicals in her employment with the defendant-employer, the plaintiff would not have developed these symptoms at the time that she did. In Dr. McCaleb's opinion, the plaintiff is not malingering.
9. As a result of the plaintiff's exposure to chemicals at work, Dr. McCaleb diagnosed plaintiff with chemical sensitivity and chronic fatigue syndrome secondary to the chemical sensitivity. Dr. McCaleb stated plaintiff has reached maximum medical improvement, and her condition is more likely than not permanent. Dr. McCaleb additionally indicated that plaintiff is totally disabled in that plaintiff will not be able to maintain regular attendance in any type of future employment. Any future employment would have to be substantially modified, and Dr. McCaleb expressed hesitation that there would be any job that could be modified enough to accommodate plaintiff's extreme fatigue. Additionally, the defendants have not submitted evidence that such a job exists in the current labor market.
10. Dr. McCaleb has imposed work restrictions on plaintiff which include not being able to continuously sit for more than one hour or stand for more than fifteen minutes, no more than two hours of either sitting or standing total in an eight-hour working day, the need to shift positions at will and lie down during the day for relief, take unscheduled breaks approximately every hour for indeterminate amounts each time, significant limitations in repetitive reaching, handling, or fingering, no more than occasional ten pounds lifting and estimated absences from work in excess of four times a month, and an express prohibition against working in any competitive type of job.
11. Plaintiff was referred by Dr. McCaleb to Dr. William J. Meggs. Dr. Meggs is board certified in internal medicine, emergency medicine, allergy and immunology, and medical toxicology. He has conducted extensive research and published many articles on chemical exposure, including chemical hazards faced by animal handlers.
12. Dr. Meggs first saw plaintiff on March 22, 1999. On examination, Dr. Meggs found a number of objective symptoms consistent with chemical irritant airway inflammation. He diagnosed plaintiff with severe chemical irritant rhinitis, with chemical sensitivities and a chemical irritant induced rosacea-like rash with chronic fatigue secondary to inflammation. Dr. Meggs identified numerous chemicals present in defendant-employer's work place with known hazards consistent with plaintiff's symptoms and which are causes of respiratory inflammation and sensitization. Dr. Meggs testified plaintiff's symptoms were due to causes and conditions characteristic of and peculiar to her employment, and are not an ordinary disease of life to which the general public is equally exposed. He expressly stated, "These symptoms were caused and this chronic condition was induced by her occupational employment at the Ahoskie Animal Hospital."
13. Dr. Meggs is of the opinion that plaintiff has reached maximum medical improvement, and her condition is permanent. He testified she is disabled from all work.
14. Dr. Robert Conder, Jr. is a neuropsychologist who performed an evaluation of plaintiff on September 8, 1999 at the request of defendants. Dr. Conder diagnosed plaintiff as having a somatoform disorder. He testified plaintiff did not have this condition prior to her employment with Ahoskie Animal Hospital. He expressed the opinion that plaintiff's somatoform disorder was due to causes and conditions characteristic of and peculiar to her employment and were not an ordinary disease of life to which the general employment was equally exposed. He also testified plaintiff's work was a significant contributing factor in the development of her somatoform disorder, and that, but for the conditions in her employment, plaintiff would not have developed a somatoform disorder at the time she did. Dr. Conder testified plaintiff was not malingering. While he did not believe plaintiff was disabled from all work as a result of her psychological symptoms alone, he expressly refused to express an opinion about the combined effect of both her physical and psychological symptoms on her ability to work.
15. Defendants introduced a report by a toxicologist, Dr. Robert Cross. The Commission gives little weight to this report in light of the fact that Dr. Cross is not a medical doctor; he has never examined plaintiff; and he has never visited plaintiff's work site at defendant-employer. Dr. Meggs has greater expertise in diagnosing and treating conditions related to chemical exposure and the report contains numerous flaws in its conclusions according to a detailed analysis by Dr. Meggs.
16. The Commission has reviewed the testimony of defendants' witness Louise Smallwood. The undersigned finds the mere fact that Ms. Smallwood did not develop symptoms similar to plaintiff to not be of determinative value in light of the evidence presented that Ms. Smallwood only worked part-time, and the testimony by Drs. McCaleb and Meggs that the very nature of chemical exposure illnesses is that individuals react differently to the same chemicals at different levels of exposure.
17. The greater weight of the medical evidence establishes plaintiff's chemical sensitivity, chronic fatigue, severe chemical irritant rhinitis, and somatoform disorder are due to causes and conditions characteristic of and peculiar to her employment with defendant-employer, and are not ordinary diseases of life to which the public is equally exposed. Plaintiff's employment with defendant-employer was a significant and substantial contributing factor in the development of the above conditions. But for her employment with defendant-employer, plaintiff would not have developed the above conditions at the time she did. The above listed conditions and resulting symptoms are an occupational disease under the Workers' Compensation Act.
18. The greater weight of the evidence establishes that, as a result of her compensable occupational disease, plaintiff has been completely unable to earn any wages since February 3, 1997. Plaintiff is entitled to total disability compensation since that date.
19. Plaintiff has reached maximum medical improvement. After reaching maximum medical improvement, the employee may seek to establish entitlement to permanent disability benefits for either a permanent partial impairment rating under N.C.G.S. § 97-31, loss of wages under N.C.G.S. § 97-30, or permanent and total disability under N.C.G.S. § 97-29. Plaintiff has elected to establish entitlement to permanent and total disability under N.C.G.S. § 97-29.
20. The greater weight of the medical evidence establishes as a medical fact that plaintiff is incapable of any employment as a consequence of her compensable occupational disease. Therefore, plaintiff is permanently and totally disabled under N.C.G.S. § 97-29
and is entitled to lifetime compensation and medical benefits.
21. Notwithstanding the finding of fact above, the greater weight of all of the evidence, viewing the record as a whole, establishes plaintiff is incapable of earning wages in any employment. Plaintiff's total disability is permanent in light of the greater weight of the evidence in that it is continual, lasting, and indefinite. Defendants have failed to present evidence of any suitable employment plaintiff can obtain and keep considering her unique characteristics. The greater weight of the evidence establishes it would be futile for plaintiff to seek other employment in her present condition.
22. A review of the entire record in this case establishes defendants had no reasonable basis for the denial of plaintiff's claim. Defendants' defense of this claim amounts to stubborn, unfounded litigiousness.
23. On March 31, 2000, the Deputy Commissioner entered an Interlocutory Order imposing sanctions on defendants for willful failure to comply with two Orders of the Deputy Commissioner to produce discovery. The March 31, 2000 Order also ordered defendants to pay the sum of $1,852.50 as attorney's fees for their failure to produce discovery. To date, defendants still have never fully responded to plaintiff's discovery and/or complied fully with the Order of the Deputy Commissioner.
24. Plaintiff received from defendant-employer some short-term disability benefits and some long-term disability benefits.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's chemical sensitivity, chronic fatigue, severe chemical irritant rhinitis, and somatoform disorder are compensable occupational diseases under the Workers' Compensation Act. N.C.G.S. § 97-53(13);Booker v. Duke University Medical Center, 297 N.C. 458, 256 S.E.2d 189
(1979); Rutledge v. Tultex Kings Yarn, 308 N.C. 85, 301 S.E.2d 259
(1983).
2. Defendants are obligated to provide to plaintiff such medical treatment as is reasonably required as a result of plaintiff's occupational diseases to effect a cure, give relief, or lessen plaintiff's disability. N.C.G.S. § 97-25.
3. As a result of her compensable occupational diseases, plaintiff has been totally disabled since February 3, 1997. N.C.G.S. § 97-29;Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982).
4. As a result of her compensable occupational diseases, plaintiff is permanently and totally disabled. N.C.G.S. § 97-29; Whitley v.Columbia Lumber Mfg. Co., 318 N.C. 89, 348 S.E.2d 336 (1986).
5. As a result of her compensable occupational diseases, plaintiff is entitled to have paid by defendants total and permanent disability compensation in the amount of $202.11 per week beginning February 3, 1997, subject to the attorney's fee awarded below, and continuing for the remainder of plaintiff's lifetime or until further Order of the Commission finding plaintiff to have undergone a substantial change of condition in her ability to earn wages after a hearing initiated pursuant to N.C.G.S. § 97-47. N.C.G.S. § 97-29.
6. Defendants' denial and defense of this claim, as well as their willful violation of numerous Orders of the Industrial Commission, were not reasonable, but rather based on stubborn, unfounded litigiousness. N.C.G.S. § 97-88.1; Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
7. Defendants are entitled to a credit for the short-term disability payments made to plaintiff. Defendants are entitled to a credit for the long-term disability payments only to the extent that plaintiff was not required to reimburse defendants. N.C.G.S. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff total and permanent disability compensation in the amount of $202.11 per week beginning February 3, 1997, subject to the attorney's fee awarded below in Paragraph 3 and any credit owed, and continuing for the remainder of plaintiff's lifetime or until further Order of the Commission finding plaintiff to have undergone a substantial change of condition in her ability to earn wages after a hearing initiated pursuant to N.C.G.S. § 97-47. Subject to any credit owed, all accrued benefits shall be forwarded directly to plaintiff in one lump sum, subject to the attorney's fee awarded below in Paragraph 3.
2. Defendants shall provide for all reasonable and necessary medical treatment that was or is related to plaintiff s compensable occupational disease for the remainder of plaintiff's lifetime, to the extent such treatment tended or tends to effect a cure, give relief, or lessen the period of plaintiff s disability.
3. Plaintiff's attorney is entitled to a reasonable attorney's fee of twenty-five (25%) percent of the amount owed plaintiff herein. As sanctions for defendants' unreasonable denial and defense of this claim, plaintiff's attorney's twenty-five (25%) attorney's fee shall be paid directly by the defendants and shall not be deducted from the sums due plaintiff. Accordingly, defendants shall forward directly to plaintiff's counsel as his fee an amount equal to twenty-five (25%) percent of the accrued lump sum benefits owing to plaintiff pursuant to this AWARD. Additionally, the defendants shall forward every fourth compensation check directly to plaintiff's counsel of record.
4. In addition to the above awarded attorney fee, defendants shall pay directly to plaintiff's counsel the previously ordered sum of $1,852.50 as sanctions for their repeated willful disregard of Orders of the Industrial Commission.
5. Defendants shall bear the costs of this proceeding.
 S/________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER